## 578. BARKLEY v. MAY.

1. A traverse of a garnishee's answer is sufficient if it merely denies the truth of the answer. The traverse may be amplified at the option of the plaintiff, but nothing more is necessary to bring in question the liability of the garnishee to a garnishing creditor than an unqualified, though general, denial of the truth of the garnishee's answer.

2. Section 2769 of the Civil Code is a means provided for creditors (including those who have no lien) to test the validity and fairness of a mortgage which purports to have been executed by one of their debtors, and which may be injurious to their interest; but it has no application to a case where the controlling question is the priority of lien as between a certain judgment and a mortgage fi. fa.

3. A judgment creditor, in the collection of his fi. fa., is not restricted to his right to rule the officer who has levied another process on his debtor's property; nor is a creditor required to anticipate that such a levy will be made. Section 4776 of the Civil Code refers to *money* raised by legal process.

4. The respective legal priorities of a judgment lien and of a mortgage fi. fa. may be determined and adjudicated on the trial of the issue made by the answer to a summons of garnishment and the traverse thereof. The case is not altered by the fact that the garnishee is a levying officer.

5. A garnishee who applies money or property in his hands, which may be subject to garnishment, according to his own judgment and without judicial direction, does so at his own risk. One who assumes to render judgment in his own case must be certain of the law and adjudge correctly.

Certiorari, from Bibb superior court—Judge Felton. June 10, 1907.

Submitted October 29,—Decided November 25, 1907.

*Glawson & Fowler, E. W. Maynard, W. J. DeLoach,* for plaintiff in error.

RUSSELL, J. Below we give the history of this case. Barkley was a bailiff. Clara May obtained a judgment against the Columbian Supply Company, and thereupon sued out summons of garnishment, which was served on Barkley. This constituted the introduction of the parties to each other. And Clara May politely asked, "Have you anything of the company's?" When ac-

costed by this judgment creditor, and in response to the saluta-
tion and inquiry of her summons of garnishment, Barkley an-
swered that he would not sneeze when she snuffed (at least not
with the Columbian Supply Company's snuff), because he was
obliged to sneeze when one Taylor (a mortgage creditor) took
(the) snuff. And said he, "Thats' nuf, and I charge $5 for an-
swering." Despite their slight acquaintance, Clara May flatly
contradicted Barkley's answer. And straightway, as usual in such
matters, they went to the justice's court. The justice must have
found the lye in Barkley's answer, for he ordered Barkley to give
to Clara May, of the Columbian Company's goods; not only starch
and chickens, tea and teapot, tomatoes, flour, and snuff, but 51
boxes of Daisy lye, on which he had levied. Barkley was not con-
tent, so to a jury went. They looked on Barkley, then on Clara
May, and said, "We say amen to what the justice said." Barkley,
still not satisfied, hailed a certiorari and rode to "big court,"
and, to be gallant, took Clara May with him in his certiorari.
The big judge wouldn't let Barkley stay in court, and overturned
his certiorari, so that he could ride no more. So now Barkley
has "writ" to us of error, and we must answer.

1. It is not disputed that Clara May had obtained a valid judg-
ment for $15.21, and that the summons of garnishment was prop-
erly sued out and served. The gravamen of Barkley's complaint
is that the process of garnishment was ineffectual to reach prop-
erty which has been levied upon by him as an officer, and that the
traverse was not sufficiently full or explicit, in its statement, to
raise any question as to the superiority of liens, or to warrant
any adjudication upon that point. As a general rule, if the deci-
sion in the justice's court is lawful and proper, and the conclu-
sion reached is right, we would not deem it necessary to pass
upon the merits of the pleadings in that court, where no demur-
rer was filed to the traverse, or any other objection offered thereto
in that court. But, as a matter of law, the traverse in the pres-
ent case was all that it was required to be, and the objections now
raised are without merit. More than fifty years ago, in *Turner*
v. *Rousseau,* 21 *Ga.* 240, it was held that "a traverse that merely
denies the truth of the answer of the garnishee is sufficient;" and
if this decision has been overruled, we are not aware of it. In
the *Turner* case Judge Benning, delivering the opinion of the

court, says: "Was the traverse sufficient? This is the only question. The court below, it seems, thought the traverse too general. . . All that the plaintiff has to do is to 'traverse' the answer of the garnishee. To traverse is merely to *deny*. 1 Chitty, Pl. 576. and note A. To traverse the answer of a garnishee is . . . merely to deny the truth of the answer,—is merely to say that the answer is not true. . . If, therefore, the plaintiff makes this denial, it is the duty of the garnishee to take issue on the denial; and that he may do, no doubt, by simply saying that the answer *is* true. Thus, in a few words, may the 'issue' to which the statute refers be 'made up.' We think, therefore, that the judgment of the court below ought to be reversed." See, also, Civil Code, §4154.

2. The plaintiff in error further insists that process of garnishment was ineffectual to reach the property in question in this case, which he says he sold after he was served with summons of garnishment, and the proceeds of which he applied upon a mortgage fi. fa. Counsel for the plaintiff in error, in their brief, say that the defendant in error failed to follow the method prescribed by law for enforcing her lien. They say she should have filed with Barkley, the levying officer, an affidavit with bond and security, and, on the issue thus formed, should have tested the superiority of her judgment lien in the court where the mortgage fi. fa. was pending, and they cite the Civil Code, §2769. This section is in no way applicable to the question in the present case. It was designed for those cases where a creditor of the mortgagor might desire to contest the validity and *fairness* of the mortgage, and not to settle the priority of conflicting liens. Such a creditor might not have, or claim to have, even the shadow of a lien on the mortgaged property, but he might be able to convince a jury that the mortgage was the result of a fraudulent collusion between mortgagor and mortgagee, injurious to him as a creditor without a lien.

The plaintiff in the court below might have been fully satisfied of both the validity and the fairness of Maynard and Guerry's mortgage, and unable and unwilling to contest either its validity or its fairness, but was she thereby debarred from showing that the property in the hands of the garnishee should be applied to her fi. fa. rather than to the mortgage fi. fa. in his hands? We think

not; because section 2769 of the Civil Code is inapplicable to the settlement of the priority between a judgment lien and a mortgage lien; and the evidence reduced this case to a mere question of priority between the plaintiff's judgment and the mortgage.

It is next insisted that the plaintiff, Clara May, should have deposited her judgment lien with Barkley and intervened, as provided in the Civil Code, §4776. The plaintiff could have done this if the property had been reduced to money by a legal sale; because "money raised by legal process is not subject to levy." Section 4776, in terms, applies only to cases "where *money* is in the hands of an officer." The evidence in this case shows that at the time when the garnishment was served, there had been no sale. At the time the garnishment issued there had been no levy. The goods the plaintiff sought to subject to her fi. fa. were in the possession of one Mims. The plaintiff levied on the goods, garnished Mims, and, perhaps not knowing whether the constable, Barkley, had levied upon the goods or not, served him also with summons of garnishment. We see no reason why Barkley was not subject to summons of garnishment, or how, merely because he was a bailiff, he could absolutely disregard it, except at his own risk. The case of *Strickland* v. *Smith,* 53 *Ga.* 79, cited by counsel, is not in point. The plaintiff in this case had a valid judgment, the lien of which had attached to the property, and instead of serving the officer with a mere notice to retain money, she adopted one of the legal means for bringing up the question for judicial decision. Section 2768 of the Civil Code, which is cited, applies only to cases where the mortgagor fails to set up his defense by affidavit of illegality, and has no application here.

3. The truth is, a judgment creditor, in the collection of his fi. fa., is not restricted absolutely to his right to place it in the hands of the officer and, by rule, have determined the priority of his lien upon the proceeds of the legal sale. He might in some instances lose many substantial advantages by pursuing that course.

4. The respective legal priorities of a judgment lien and of a mortgage fi. fa. may be adjudicated by the determination of the issue made upon the answer of a garnishee and the traverse thereof. *Pupke* v. *Meador,* 72 *Ga.* 230. The garnishee, answering that he had had property of the defendant in fi. fa. in his possession,

but that he had had it sold under a mortgage fi. fa. in his favor, of superior lien to the plaintiff's judgment, would, if the plaintiff traversed this answer, be bound to establish at his peril that his mortgage fi. fa. was really superior to the lien of the judgment. When the answer is traversed, the burden of proof is upon the garnishee, whenever it is shown that the defendant in the judgment was the owner of any goods of which the garnishee was in possession and from which the garnishee has realized a sum of money; this makes out a *prima facie* case for recovery by the plaintiff, and the onus is cast upon the garnishee to show that the money is not subject to the garnishment, if he so claims. *Smith* v. *Bondurant,* 72 *Ga.* 232. We do not see that the case is altered even if the garnishee be a bailiff. One who is a levying and collecting officer can be garnished, and if the property is in custodia legis and he so answers, and the truth of his answer is established, he will be directed by the court as to disposition of the fund. He can proceed with the process which he is charged with executing, and bring to sale property levied on, but the proceeds must be held to await the final decision on the garnishment. But if his possession be personal, instead of official, or if he has taken the risk of disregarding the process of garnishment, and it transpires that he has himself adjudged that the property or money of the defendant in his hands was not subject to the process of garnishment, and it happens that his judgment on the law and facts, or either, was erroneous, and he has disposed of the property or money despite his garnishment, he is liable to have a judgment entered against him and in favor of the garnishee. There is no trouble, however, in this case upon the subject of legal custody, for the bailiff not only wrongly judged the law, but, from the evidence before the jury, his possession of the property was personal, and not official. In this case the lien of the judgment was superior to that of the mortgage fi. fa. The judgment in favor of Clara May was rendered October 13, 1906; and while the mortgage was foreclosed October 2, 1906, it had never been recorded. *Thompson* v. *Morgan,* 82 *Ga.* 549 (9 S. E. 534). The mortgage not having been recorded, the mortgage fi. fa. issued thereon was postponed to the judgment in favor of the plaintiff. Furthermore, the evidence showed, without contradiction, that her fi. fa. was levied on the goods on October 22, and the jury was

fully authorized to find, from the other evidence, as well as from bailiff Barkley's own entry of levy, in spite of his explanation in relation thereto, that his entry of levy spoke the truth. If so, the mortgage fi. fa. was not levied until October 29, 1906, which was a week after the levy of the other fi. fa.; and the property being already in custodia legis, the bailiff had no right to the possession of the property or to dispose of it. When he did take possession, it was as an individual; and as he was served with summons of garnishment on October 31, if he thereafter disposed of the property he became liable to account to the plaintiff.

We think, therefore, that the judgment overruling the certiorari was right. We can only answer· the writ of Barkley by saying, "Pay that thou owest; go and sin no more."

*Judgment affirmed.*